United States v. Maldonado and Mr. Gill. May it please the court, I'm Paul Gill with the Federal Public Defender. Together with my colleague Patrick Bryant, we are here representing the appellant Mr. Macias-Maldonado. We are here because it is procedural error to do what the record is wrong to base an illegal reentry sentence in whole or in part on an offense level derived from a non-immigration guideline unrelated to any specific offense characteristics or elements for the immigration offense. When I say that the judge acknowledges it wrong, we did have an unusual feature in this case where the judge entered an order vacating the sentence later. Ultimately, the defense filed a motion to unvacate, as it were, based on construction of Rule 35. The judge ultimately agreed with that proposition and imposed the same sentence of 48 months he originally imposed. But during the proceedings on the post initial judgment or initial sentencing activities, he acknowledged that in writing, that's Joint Appendix 176, that 2A.3.1, the substance of guideline applicable to a sexual abuse case, was improperly used to calculate the substantive base offense level, to quote the district court. In addition, he said during the hearing on that on the jurisdictional question that quote, what should have been done is not to adjust the base offense level but to assess. But then the district court also said that the error was harmless at JA 253. So does that require us then to affirm? Judge, I think with respect to harmlessness, the question, again, first of all, it is really the government's burden to sustain as far as harmlessness. And in addition, the thing about harmlessness, Judge Payne also recognizes, and I think this is a great turn of phrase by Judge Payne, one of the reasons he thought it was clear error to apply the guidelines the way he did to really get to the starting point of between five and eight times what the otherwise properly calculated guidelines or even guidelines with a 4A.3.1 analysis would get us to, is if you calculate the guidelines wrong, you have got your foot off base at the beginning. And in decisions from this court, harmlessness can sometimes be found if the district court specifically addresses it and says whether I started with this, whether I determined the guidelines this way or that way, I would come to the same result. I don't think that is what is belied by the record, even including the reference that Your Honor makes to what the record says. And that is the reason why I would say that this is not harmless error. With respect to the methodology itself that Judge Payne talked about, in essentially, again, applying this guideline for a totally unrelated offense and for a prior conviction he had in state court to determine the offense level, the government seems to rely on a lot of cases that really are not describing facts like that. The government relies on cases in which aggravating elements or offense characteristics of the crime conviction are in play. For example, Dixon, which by the way, Rivera-Santana, which I know gets a lot of play. I think to my knowledge, it is the only 20-year stat max sentence on an illegal reentry in this district. But Rivera cites the Dixon case, a 2003 opinion from this court, as quote, affirming departure based on defendant's prior arrests involving misconduct similar to the offense of conviction. Just to follow up on Judge Thacker's question here, even if the district court got confused, confused the instant offense with something that should have counted as an enhancement, let's suppose it did, is it really practical to think that the district court would do anything else on remand? Because when you read the circumstances of what happened here, I mean, it was really, we talk about it as a sexual battery misdemeanor, but that really understates what happened here because this was a rape, pure and simple, at least as the PSR reports it. I'm not sure that it was ever contradicted at sentencing and confronted with this gruesome set of facts. Is the district court really likely to do anything differently? Judge, I think what I point to is the way that Your Honor asked the questions in terms of that the judge would have done differently. The issue for harmlessness isn't would the judge maybe have done the same sentence, it's do we have evidence that regardless of the error he made, either in initial guidelines, and I see no reason conceptually to take a different position when- We do have a statement here. The district court just flat out says, I'm going to impose the same sentence no matter what. Judge, I think that the notion that that defines harmlessness, what we have here still is the judge without necessarily, he acknowledges, or again, he says outright several times, I made a mistake in where I started from. He then, honestly, when he says he got to 57 to 71, I'm still unclear on how the district court even under a different version of guideline-based departures gets to 57 to 71, and I don't think it was explained. I guess what I'm saying is there's a perfectly legitimate way to arrive at the very same sentence, because if you take the battery offense as the basis for an enhancement, then you would go to an analogous federal statute, and then the analogous federal statute would be determining the extent of the harm, and the analogous federal statute is 2241A, which prohibits causing another person to engage in a sexual act by using force against that person. So, what I'm asking myself is, in the harmlessness inquiry, was there a legally sound way of reaching this very same sentence that the district court says, or is there a legal barrier? It seems to me by using 18 U.S.C. 2241A to determine the extent of the variance that the district court could quite easily arrive at the sentence that it did. Well, Judge, again, I go back to the court didn't address, and the court really was in no position to address, but the court did not address that . . . Let me go back. At one point in the record, a colloquy that the court has with me arguing the post-trial motions basically says, so what you want to do is go to the Fourth Circuit, get reversed, and come back and hope for a better sentence. And I say that is essentially what my client wants to do, Judge. And I believe the words he says were something to the effect of, you know, maybe that will happen. I mean, essentially, he is not . . . Did you object to the statement in the pre-sentence report as to what happened in that automobile? Judge, we did not object because, as I understand, that wasn't trial counsel, but that comes out of a police report. Again, there was no judicial . . . Yes, but this is a sentencing matter, and, you know, I don't see it as a shepherd question in terms of trying to use what you can or can't use to imply a predicate offense. I just think this is a straightforward sentencing matter for an illegal re-entry case, and so if you don't object to the pre-sentence report, it's as good as adopted. Again, Judge, I can't comment on that beyond acknowledging, yes, on the record, there was no dispute about the pre-sentence report, including what I understand to be the allegations from a police report. Given the gruesomeness of it, is there any practical reason that, given what the district court said, given the gruesomeness of it, given the fact that there's a legally sound reason to reach the sentence, is there . . . But, Judge . . . It seems like just one of those jump-through-the-hoops revams. Well, Judge, first, I think I might say jumping-through-the-hoops is what the court's law requires. I mean, the court, in terms of defining procedural reasonableness, says reasonableness goes not just to the sentence imposed, but I think the quote the court has used before is, the method employed in determining it. And the method, Judge Payne . . . What was the proper guideline? The proper guideline, the guideline that everyone accepted as appropriate in the . . . And calculated in the pre-sentence report was 15 to 21 months. Judge Payne did go through a 4A1.3 analysis, adding a few more points, and ended up saying, what that gets me to is, I believe, 24 to 30 months. So basically, bumping the criminal history category as applied from Category 4 to Category 6, and that bumped the range up from 15 to 21 months to 24 to 30 months. But the only way, then, he made the leap, the method he employed. So the actual method employed by the district court here is, I'm going to apply this sexual abuse guideline as if he has committed the offense, the federal offense of sexual abuse, and that's where I'm starting from. He then did vary downward. Now, that was what? That varied . . . He varied down from that. So what was the guideline they went to then? Well, again . . . Where does the 57 to 71 come in? Judge, that's what he said in the post . . . in the arguments after the initial sentence was entered. What he did was, again, he entered an order saying, I did wrong to go about it this way. He did make some reference on the record to, I should have not used the 2A3.1 guideline to adjust the base offense level, but to use it as an enhancement, to quote him, and ostensibly that would have generated a 57 to 71 month range. I, perusing the record and looking at the briefing again, I'm still unclear what the district court meant in saying . . . In addition to the harmlessness of the question, didn't you invite the error here when you told the district court that it had the authority to look to the analogous federal statute in deciding how to treat the past conviction for sexual battery? Well, Judge, if I may, a couple of things on that. One is, is trial counsel clearly and consistently articulated in writing and verbally at the sentencing hearing the reasons why he believed a sentence of a year and a day was appropriate, so he consistently was opposing any different . . . He even opposed a 4A3.1 analysis and suggested that the court should not add additional points. This is basically from about page 138 of the joint appendix to about page 150 of the joint appendix. There's a lot of back and forth, and again, trial counsel acknowledges in the abstract what the court can do in terms of adding to an offense level or adding to a criminal history category. When you told the court that it could consider analogous federal statutes as a basis for variance, weren't you actually encouraging the court to use the sexual battery conviction in that way? No, Judge. I would say that when one is especially when asked by this particular district court, Judge, what is my authority, that this particular district court literally wants to know what's the authority, what's the law say I could or could not do. Now, with respect to what he ultimately did, so for example, if you look at joint appendix page 139, at first the discussion is really not about applying the base offense level at all. There's no discussion of that. Judge Payne does not say, well, what if I want to apply the base offense level for sexual abuse and apply it here? Judge Payne is clearly, the district court is clearly involved in talking about a guideline or guideline-based departure. Again, he doesn't talk about using that base offense level. He talks about and asks trial counsel about a provision of the existing guideline. He says, well, why don't I get an extra eight offense levels because of this provision in the guideline? What trial counsel points out is, Judge, that's because the offense, the sexual abuse conviction or the misdemeanor conviction was after his last re-entry, not before, and so it really had no application as a guideline. In other words, the guidelines were correctly calculated and the immigration guideline would not allow simply adding eight offense levels for that particular conviction. The other thing that trial counsel pointed out during that colloquy was that actually the guidelines had been deliberately changed by the sentencing commission, ostensibly tasked with the charge of making things 3553 compliant and making changes in conjunction with those sort of concerns. If anything, even if there were some older immigration guidelines that might have treated this person as having a higher offense level, those had been fastidiously addressed by the sentencing commission, which said, well, that's not how it should be, and that's where we came up with the 15 to 21 months. Judge, I see my time is almost up. Does the government agree that the correct guideline is 15 to 21? I believe everybody on the record agreed that the PSR as drafted and filed was appropriate and correct and agreed with the 15 to 21. That's agree on appeal is 15 to 21, as far as you know. I don't know that they're agreeing on appeal. At the district court level, the calculation of the guidelines as guidelines seemed to be accepted by both sides. There was arguments about how to get it up, and again, this particular district court judge wanted a guideline-based departure analysis before going on to anything else. Thank you. Thank you. Mr. Schiller. Good morning, Your Honors. I'm David Schiller from the U.S. Attorney's Office on this matter. With regard to this argument, I would make three points. One is that the upward variance sentence in this case . . . Can you put the mic down just a little bit, please? Is that better? That's great. Thank you so much. Thank you. An upward variance sentence was reasonable on the facts of this case, as Your Honor has already addressed with regard to this. And to answer your question, the facts were stipulated to, there were no objections to the pre-sentence report and its entire content in the sentencing hearing. The second point is that it is procedurally reasonable to make a reference to an analogous statute to objectively determine the extent of variance. That analogous statute would establish the ceiling for considering the effect . . . Didn't the district court itself recognize that that was error to have done so? The court certainly said that, yes. He was rethinking it in the subsequent proceeding and made comments exactly to that effect. I frankly will argue here today that, in fact, that observation was incorrect and that that is wrong. So the court committed error by saying he committed error? Yes. Yeah. Really? You do this long enough, you're going to see virtually everything. But . . . So did you tell the district court below that it was wrong when the court said it had committed error? Did you say, oh, no, you didn't? Well, that kind of . . . Nothing to see here. Well, the argument was certainly to that effect. Did you cross appeal? No, Your Honor. No, Your Honor. I was satisfied with the sentence as was imposed. And then, despite all the procedural steps that we took, especially in that subsequent hearing, it came out the same way. And I firmly believe that, in any event, this is a harmless error issue at most. And what's your best evidence that it's harmless? Two things. Well, the judge made four specific statements that he will impose the same sentence. At 234, 235, he says, whether or not the district court substituted base offense level or just applied an upward variance, the 48-month sentence was appropriate. And below the range, the court might have applied through other methodologies. He says on page 236 of the appendix that, rather than imposing an erroneous sentence, it might be more accurate that the court had just used the wrong term, which would not Thirdly, later on, on 236 into 237, he says, either way, the district court noted that, at bottom, any error is harmless, given the 48-month sentence was appropriate. And below the range, the court had considered to structure a variance, as opposed to the analogous statute. And then, finally, in the August 31, 2017 order, he concluded that any error was harmless. He says, writes, if I may quote, because the court ultimately varied downward from the errantly calculated departure guidelines in this case and did so in order to impose a sentence that it independently determined was sufficient but not greater than necessary under 3553A, any error in calculating the departure was harmless. For that reason, the court vacated its order of vacature and reinstated the original sentence. So you have the district court unequivocally saying that he considered it independently, two different methodologies, and came to the same conclusion. And there's no way to read this record other than Judge Payne expressly said that he reached it either by straight variance analysis because of the horrific facts of the case. Did he understand the guidelines were 15 to 21? Oh, yes. That was stipulated, too, at the start of the sentencing. Page, excuse me. No, go ahead. 115 and 16, there are no objections by both parties. The court then accepts and adopts the PSI at page 117 and the range of 15 to 21 months. Of course, he later imposes the 48-month sentence as an upward variance. And with regard to that, the judge very clearly had specific reasons for why an upward variance was appropriate under any set of circumstances because of the specific facts of this case. How is it an upward variance from the wrongfully selected analogous federal offense? I thought the court said the sentencing range for that would be 120 to 150 months. That's correct. I was speaking upward variance from the 15 to 21-month range. When you have the error in here of using the wrong offense, assuming we find there was error, the sentencing range the court said for that would have been 120 to 150 months. Yes. And yet the court sentenced him to 48 months. How do we know that? I mean, that doesn't seem like an upward variance. Oh, no. I know it's an upward variance from 15 to 21 months, but if you go back, if the court goes back and uses the appropriate analogous offense and not the inappropriate one, it's much lower down. You might not go all the way to 48 months. We don't know. You might go 21 months. You might go 36 months. No, with respect to your question, no, I think the district court said very unequivocally that while the analogous federal statute 2242 and the sexual assault under Title 18 and applying the 30 base offense level increase from the guidelines as in the PSI, he considered that an error in the subsequent hearing and said so. And then he downward from that, figuring that 48 months was appropriate and avoided disparity, and he articulated the reasons why that should happen in that case. So that was one track. But then he also does the classic variance analysis in which he says under the 3553A factors, and he cites six of them I was about to reference. Was that at the sentencing hearing? Yes, yes. But all of that is before this quagmire after the fact. How can we be certain that the sentence would be 48 months other than, yes, I know the judge said it after the fact, but after the fact he just said it and didn't go through, the district court just said it and didn't go through the analysis, the proper analysis that should have been done even as the district court recognized in the first instance of the sentencing hearing. Do you see what I'm saying? Wait, how do we know that it was harmless, that he would sentence him again to 48 months under the proper analysis? Because, well, there are two answers to that, I think. One is that some of the statements that I just referenced were at the sentencing hearing, because in the discussion with Mr. Shelton as to, well, okay, if you're correct, Mr. Shelton, that I shouldn't reference that, even though counsel, as Judge Wilkinson pointed out, did in fact concede that the court had authority to look at that analogous federal statute. But that issue aside, there was, in the discussion at the sentencing, there was consideration, and he says, well, okay, if that's wrong, even under a straight variance analysis, I'm going where I'm going. And then he listed out, if you look from, starting at 122 and going up through 160 and 174, you see various classic upward variance analysis by Judge Payne. He's very particular. He wants to do the Moorhead old way of doing it. So he's very particular on procedurally getting to that point. And I think the record is very clear that he took two tracks at that point, and in discussion with Mr. Shelton, made that clear that he was doing two tracks. And he says, either way, this is the appropriate sentence under these facts. Then if there were any issue as to that, certainly the August opinion, after the subsequent hearing, he makes crystal clear, beyond any imagination, that he thinks that the 48-month sentence was appropriate under either way. And in fact, he says, I went under the sentence I could have calculated under a classic methodology of upward variance. So I think he did it in both places. To answer your question, if I follow your question directly. But in any event, the first point is that there was ample reason, six reasons, as stated in the sentencing transcript, for why an upward variance was appropriate in this case. And that remains there to determine reasonability of the sentence, both in terms of the methodologies used and then the harmless error analysis. So the second point about a court using an analogous statute to objectively determine the extent of variance, it is just one method that I submit the court has frequently ruled is an appropriate way to go. The Gary case of this court talks about, you have to have a principle determination method to decide the extent of upward variance. And from that opinion, this court has written, analogies to similar offenses or aggravating circumstances may prove the best method for principle determination of departures. And looking at how sexual assault is treated under the federal code and therefore the relevant guideline, is a principle method I would submit for determining the extent of variance allowed. And I say that only in terms of determining the ceiling for what one should treat that relevant conduct. I disagree with Mr. Gill's point about that this sexual assault was not part of the offense. I submit that, in fact, it was relevant conduct. Under any number of guidelines, you can look to what the defendant's relevant conduct, his criminal history, was pre and post violation here. And that's exactly what happened here. And we had a circumstance where a grievous... Had he already been sentenced for that state offense? Yes. Yes. But that does not stop a federal court from considering that offense and that conduct to determine what he should do with regard to the immigration violation. And the principle is not a hard one. It's that an alien who comes here and violates 1326A by repeatedly coming here, is subject to one sentence. But an alien who comes here and does the same violation, but then commits a grievous offense, in this case, as everyone was characterizing it, a rape, even though it's a conviction of sexual assault under the state code, the facts are there and they're uncontested. That alien should be treated differently than the earlier and simpler case that I mentioned. And, you know, this court's decision in Musley, if I'm saying that right, in 2004, makes exactly that point. The court wrote, the reasonableness of departure may be evaluated by treating the aggravating factor as a separate crime and asking how the defendant would be treated if convicted of it. Importantly, an upper departure should not exceed the sentence that would result under guidelines if the defendant actually had been convicted of the conduct underlying the departure. Now, we have a circumstance where because that sexual assault occurred after his illegal entry, it doesn't get factored in for that eight-level bump under the guidelines. And so the question is, should the court consider that grievous conduct done after illegally being here, but for his immigration violation that wouldn't have occurred? And the answer has to be yes, has to be yes. And the court in Musley made very clear that in that circumstance, you, in fact, do look to that offense. And if he'd been convicted under the federal code, what would the treatment have been? Just to set a ceiling. And that's all that Judge Payne did with regard to this. And there's nothing that I can see in the case law that says- Under that, wouldn't the ceiling be 21 months? No, the ceiling would be 120 months. No, the one you just read there, that they said that the under the- No, no, the, I'm sorry, you're talking about the Musley? Yeah, what you're just reading, you're reading from that case. Yeah, the opinion says, you look to the aggravating factor, in this case, the sexual assault conduct, and you ask, if it was a separate crime, how would the defendant be treated if convicted of it? And so if it had been a separate crime prosecuted in district court here, how would he have been treated? And the answer is, the guideline would have been base offense level 30 and the guideline range would have been 120 to whatever the range that he discussed was. And that's all Judge Payne said was, okay, so that's my ceiling here. And then he said, but I think under the totality of circumstances, that's too much, greater than necessary to meet the guidelines, the objectives of 3553A, which is exactly what we want a sentencing court to look at next, right? And then he said, okay, so then let's look at the variance and where would I end up otherwise? And that's when he ends up at 48 months. And that's why I say in answer to your question, I may not have been particularly clear, I apologize, but that's why I say it's unequivocal that the judge took two different tracks to get to the same point. In one case, he went up to 120 and then broke it back down.  he went and took the original PSI and then went up based on the totality of circumstances and the six 3553A factors that he specifies in the sentencing transcript. And then he says, I'm at the same place in colloquy with Mr. Shelton. And then if there was any issue as to that, he makes that crystal clear in his August decision. The court in Davis made the same point that you can look to analogous guidelines and cases on that aggravating circumstance. The defendant talks in the reply brief about disparities. And I just want to make a point that disparities is not the issue under the statute. It's unwarranted disparities. And there's nothing unwarranted in this sentence where the defendant comes and does the conduct that he was there. Judge Wilkinson made the point, and we make it several times in our brief that in the discussion at the sentencing council, made very clear that you can look to the analogous federal statute. He said, you can look to analogous federal statutes for state criminal convictions to determine an objectively reasonable amount to upward to part vary. And for variance purposes, it would go more to the offense level. That's defense counsel says that. He also says that you can take those same factors and under 3553A look to them. That's what exactly Judge Payne did. Mr. Shelton said, you can easily link this to protection of the public, history and characteristics of the defendant. And a sentence of 10, 15, 20 years could therefore be appropriate. He says, we do not dispute that. The court has absolute authority if it chooses. And that is the record there. Which brings me to the third point, and that is harmless error. There are two tests that the court has articulated. One is knowledge that the district court would have reached the same result, even if it had decided the guidelines issue the other way. And second, it determined... What was the error? I'm sorry? What was the error? Well, it's if you say, well, the defense is arguing that it's an error to... You're arguing harmless error. So tell me what the error is that you're claiming it was harmless. The error... If it is error to cite an analogous federal statute... You gotta say there was error, right? I mean, the government... I do not... Go ahead. I do not concede that citing to a federal statute... Well, then you can't argue it was error. You're saying the judge didn't commit error. Your position on appeal, he didn't err. That's correct. But if you accept the defense argument as articulated by Mr. Gill a moment ago, then I submit it's harmless. And it's harmless because there's an alternative... What's the error then that you perceive that the defendants point out? The reference to the federal statute as a guidepost as to the extent of variance. That's what they're arguing is an error. Okay, I'm just trying to get... I'm trying to fix the error. No, no, I appreciate that. The government doesn't like to admit anything sometimes. Well, I... The judge did. He perceived there was an error. Yes. Right. Yes. Is that what he perceived that was there? Yes. What you just articulated? He specifically articulated that he decided that that was erroneous. And you think he was wrong? Correct. And I said that at the secondary hearing, that no, I stood by that. And the statute and the case law is unequivocal. I think that you can cite to other statutes as a guidepost for the extent of variance and to establish a ceiling for what would be appropriate. As to that, and as I say, that's all that the judge did here. But the court specifically said, as I, in response to Judge Thacker's question, said numerous times that he would have gone the same place by the classic variance analysis. And he had ample authority by the 3553A factors he applied to get to that point of 48 months. It was not even a heavy lift to get to that point because it was below what he otherwise would have, under classic variance, he would have moved the base offense level to result in a 57 to 71 month range. And he said, I'm even under that. And so he said that it was a harmless error and most even under his analysis. Yeah, I do note that the defense raised, as I've run out of time here, the Whitehead decision that Your Honor and Your Honor were opinions on there with regard to that. But I submit that Whitehead said very quickly, very clearly, only something more than a review of 3558A3 factors is needed. And in this case, we have an unequivocal statement of the district court. And this court in Watford, 692 F Appendix 108, said where the district court determined it would have imposed the same sentence, any error was harmless. In U.S. versus Roy, to the same point. The last point, if I may make, I've got to stop here, is the standard review also applies. And where you have two reasons and at least one of the rationales supports the statement under the standard of review, it would be affirmed. We thank you, sir. Thank you very much. We'd ask for affirmance. Mr. Deal, you have some rebuttal time. Judge, I'd like to start with the Gray and the Moseley case and relate it to the relevant conduct principle articulated here. Moseley was actually my case. I was trial counsel and appellate counsel for that case. That case affirmed a sentence that was based in part on essentially other fraudulent conduct the defendant was deemed to have affected by reason of his conviction for the social security fraud of which he, for which he was found guilty. Gray, similarly, is about a case in which extreme, vile, threatening male communications where the sentencing was much higher than the guidelines otherwise called for because the court found, the district court found that there was extreme psychological injury and other victim impact. Actually just cited particular provisions of the guidelines that allowed for an upward departure based on really what is clearly relevant conduct. The victim impact and injury caused by the offense of conviction conduct. As to the proposal to, well, you can get there by saying his conviction for the sexual assault was somehow relevant conduct to his being here in the United States. I think that presents many problems, not the least of which is if that is the rule of the Fourth Circuit, then there are gonna be some people who come in and commit a number of crimes after their reentry and those by the working of relevant conduct law will not be deemed part of the criminal history because it's deemed part of the relevant conduct of the offense of conviction. I don't think the court wants to go there. Judge Thacker, I would just simply say you're right in the proposition that perspective matters and when the judge is saying I'm giving the defendant a break by coming down, that makes that much more critical, where you start and how you get there and you are not employing a reasoned method if you get there. And what about Mr. Schiller's argument that the district court took two track approach so that we can look at the alternative track? Sure, part of it I guess I'd say is we certainly didn't hear articulated at the original sentencing and that's what the judgment of course reflects is what the original sentencing was done. We do not have anything from the district court saying even if I come up with a completely different guideline range I would have downwardly varied to this number. Of course, even saying that, if he had said that... But he said I'd get to this number no matter what. Judge, he does say that after basically when we're challenging his authority to revisit the sentence. I see my time is up. I think I'll stop there. Thank you, Judge. Thank you. We'll come down and recounsel and take a very brief recess.
judges: J. Harvie Wilkinson III, Robert B. King, Stephanie D. Thacker